IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLIOT DIAMOND, DPM,<br><br>Plaintiff,<br>v.<br><br>ROBERT F. KENNEDY, JR., SECRETARY OF HEALTH AND HUMAN SERVICES, in his official capacity,<br><br>Defendant. | CIVIL ACTION NO.<br>____________________<br><br>**COMPLAINT IN CIVIL ACTION** |

Plaintiff Elliot Diamond, DPM ("Plaintiff"), by and through his counsel of record, Hill Fenstermaker LLC, against Defendant Robert F. Kennedy, Jr., Secretary of Health and Human Services, in his official capacity, alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for judicial review of a final decision by Administrative Law Judge ("ALJ") Gerald Foulds dated November 30, 2023 ("Decision"), Office of Medicare Hearings and Appeal Number 3-12978272650. The Decision is attached hereto as **Exhibit "A."**

2. Plaintiff timely appealed the Decision to the Medicare Appeals Council ("Council") on January 25, 2024, Docket Number M-24-1639.

3. Pursuant to 42 C.F.R. § 405.1100(c), the Council was to issue a decision, dismissal or remand order within ninety (90) days after the appeal, but the Council did not issue any decision within the statutory timeframe.

4. On August 6, 2026, Plaintiff submitted a request to the Council to escalate the appeal to Federal district court pursuant to 42 C.F.R. § 405.1132(a)(2).

5. On September 18, 2026, the Council granted Plaintiff's request for escalation. The Order of Medicare Appeals Council Granting Request for Escalation ("Order") is attached hereto as **Exhibit "B."**

6. Plaintiff contends that the ALJ improperly denied reimbursement for reasonable and medically necessary services provided by Plaintiff to Medicare beneficiaries or, alternatively, improperly determined that Plaintiff was not entitled to a limitation or complete waiver of liability.

**PARTIES**

7. Plaintiff is a professional corporation organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Philadelphia County, Pennsylvania.

8. Secretary Robert F. Kennedy, Jr., is the Secretary of HHS, in which capacity he is responsible for the conduct and policies of HHS, including the Centers for Medicare and Medicaid Services ("CMS"), its contractors, and for administering the Medicare program. Secretary Kennedy is named in his official capacity.

**JURISDICTION, VENUE, AND TIMELINESS**

9. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g), as incorporated by 42 U.S.C. § 1395ff(b), and 5 U.S.C. § 702.

10. The total amount in controversy is approximately $108,991.45, which far exceeds the jurisdictional requirement set forth in 42 U.S.C. § 1395ff(b)(1)(E)(i) and 42 C.F.R. § 405.1136(a)(1).

11. Venue is proper pursuant to 42 U.S.C. § 405(g) and 42 C.F.R. § 405.1136(b)(1).

12. The Order is dated September 18, 2026. This action is therefore timely pursuant to 42 C.F.R. § 1130, 42 C.F.R. § 405.1132(b) and 42 C.F.R. § 1136(c).

## THE MEDICARE PROGRAM

13. The Medicare Act establishes a federal government program that provides health care coverage to the aged and disabled. *See* 42 U.S.C. §§ 1395–1395lll.

14. This action arises solely under Medicare Part B—Supplemental Medical Insurance Benefits for Aged and Disabled ("Part B"), which concerns covering basic non-hospital medical needs. *See* 42 U.S.C. § 1395j–1395w-6.

15. Under Part B, Medicare generally covers items and services that are "reasonable and necessary" for the treatment of Medicare beneficiaries. *See* 42 U.S.C. § 1395y(a)(1)(A).

16. To obtain payment for reasonable and necessary items and services, healthcare providers participating in Medicare submit claims for reimbursement to a Medicare Administrative Contractor ("MAC"), a private entity that processes claims in a geographic region assigned by HHS. The MAC makes an initial determination as to whether an item or service qualifies for reimbursement in that specific geographic region. *See* 42 U.S.C. § 1395kk-1(a)(4)(A); 42 C.F.R. § 405.920.

17. A healthcare provider that is dissatisfied with an initial determination may pursue an administrative appeal. *See* 42 C.F.R. § 405.904.

18. The administrative appeal process involves the following: (1) a redetermination by the MAC; (2) a reconsideration by a Qualified Independent Contractor ("QIC"); (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) a review by the Council. *See* 42 C.F.R. § 405.904(a)(2); 42 U.S.C. § 1395ff.

19. A healthcare provider that exhausts its administrative appeals may seek judicial review in federal district court. 42 C.F.R. § 405.904(b)(1); *see also* 42 U.S.C. § 405(g).

20. To provide some consistency and uniformity in coverage determinations, HHS has established a process for creating Local Coverage Determinations ("LCDs") and National Coverage Determinations ("NCDs"), which process requires opportunity for notice and comment. *See* 42 U.S.C. § 1395y(l). NCDs provide nationwide coverage determinations for particular items or services and LCDs provide coverage determinations for particular items or services within a specific jurisdiction. *See* 42 U.S.C. § 1395y(l)(6).

21. An item or service that is not governed by any NCD or LCD may still be covered by Medicare on a case-by-case basis if the item or service is determined to be reasonable and medically necessary because it satisfies the following criteria:

- It is safe and effective:
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
    - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
    - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
    - Ordered and furnished by qualified personnel; and,
    - One that meets, but does not exceed, the beneficiary's medical need.

*See* Medicare Program Integrity Manual ("MPIM"), CMS PUB. 100-08, Ch. 3, § 3.6.2.2.

## FACTUAL AND PROCEDURAL HISTORY

22. At the time of events giving rise to this litigation, Plaintiff was a podiatric physician licensed in Pennsylvania to provide podiatry treatment to Medicare beneficiaries, among other patients, in or around Philadelphia, Pennsylvania.

23. Between May 17, 2021, and October 18, 2021, Plaintiff treated numerous Medicare beneficiaries suffering from orthopedic conditions such as bursitis, synovitis, and tendonitis.

24. After conversative care failed, Plaintiff treated the Medicare beneficiaries' orthopedic ailments with amniotic fluid injections.

25. The amniotic fluid product used by Plaintiff, and subject of this litigation, is Healthcare Common Procedure Coding System ("HCPCS") code Q4206 ("Fluid Flow").

26. After treating the Medicare beneficiaries' orthopedic conditions with Fluid Flow, Plaintiff submitted claims for reimbursement to the respective MAC, Novitas Solutions, Inc. ("Novitas").

27. The services at issue were initially paid but were later subjected to a post-payment audit conducted by SafeGuard Services LLC ("SafeGuard"), the Unified Program Integrity Contractor ("UPIC") for the Northeastern Jurisdiction established to identify, research and investigate Medicare claims.

28. On July 28, 2022, Plaintiff received an overpayment determination from SafeGuard wherein SafeGuard found an overpayment of $108,991.45.

29. On August 19, 2022, and August 22, 2022, Plaintiff received demand letters from Novitas totaling $108,991.45.

30. Pursuant to 42 C.F.R. § 405.940, Plaintiff timely requested redetermination on November 3, 2022.

31. Novitas issued multiple unfavorable redetermination decisions between December 15, 2022, and December 27, 2022.

32. Pursuant to 42 C.F.R. § 405.960, Plaintiff timely requested reconsideration by the QIC on June 6, 2023.

33. On August 14, 2023, the QIC issued an unfavorable reconsideration decision.

34. Plaintiff appealed the QIC's reconsideration decision to the ALJ on October 10, 2023, pursuant to 42 C.F.R. § 405.1000.

35. An ALJ hearing before the Honorable Gerald Foulds was held on November 16, 2023.

36. Plaintiff's counsel in the administrative process, Plaintiff, and Plaintiff's expert appeared and provided testimony on behalf of Plaintiff at the ALJ hearing.

37. No CMS contractor participated in any capacity at the ALJ level.

38. On November 30, 2023, ALJ Foulds issued an unfavorable ALJ Decision.

39. The ALJ found the services provided by Plaintiff were unreasonable and not medically necessary because the services were not safe and effective and, thus, Plaintiff was not entitled to payment for the services at issue.

40. The ALJ also found that Plaintiff's liability for the overpayment could not be limited or waived.

41. On January 25, 2024, Plaintiff appealed the ALJ's unfavorable decision to the Council and submitted briefing detailing the errors made by the ALJ.

42. On August 6, 2026, Plaintiff requested permission from the Council to escalate the appeal to this Court since the Council failed to issue a decision within ninety (90) days of Plaintiff's appeal of the unfavorable Decision to the Council.

43. On September 18, 2026, the Council issued its Order allowing escalation.

## COUNT I: ADMINISTRATIVE FINDINGS NOT SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

44. Plaintiff incorporates the information set forth in paragraphs 1 through 43 as though fully set forth herein.

45. Pursuant to 42 C.F.R. § 405(g), the ALJ's factual findings must be supported by substantial evidence.

46. The Decision is not supported by substantial evidence.

47. The Decision ignores evidence submitted by Plaintiff and ignored overwhelming objective evidence that contradicts the ALJ's ultimate conclusions.

48. Specifically, the ALJ relied on evidence not in the record, ignored Plaintiff's expert's evidence and testimony on Fluid Flow, ignored overwhelming objective evidence regarding the safety and efficacy of Fluid Flow, ignored overwhelming objective evidence that the services at issue met coverage criteria, and ignored overwhelming objective evidence regarding Plaintiff's exercise of reasonable care in billing and accepting payment for the services at issue.

49. Because the Decision is not based on substantial evidence, Plaintiff has been erroneously denied benefits to which Plaintiff is entitled.

50. The ALJ's failures have caused Plaintiff significant financial harm.

## COUNT II: FAILURE TO APPLY PROPER LEGAL STANDARDS AND REGULATIONS

51. Plaintiff hereby incorporates the information set forth in paragraphs 1 through 50 as though fully set forth herein.

52. The ALJ is required to follow all laws and regulations relating to the Medicare program.

53. The ALJ committed reversible legal error by failing to apply the correct legal standards and governing regulations.

54. Specifically, the ALJ erred in misapplying the laws, rules and regulations relating to coverage for the services at issue and to Plaintiff's limitation or waiver of liability.

55. The ALJ's failure to adhere to applicable law and regulations violated Plaintiff's legal rights necessitating reversal or remand of the Decision.

**COUNT III: INVALID AND UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706**

56. Plaintiff incorporates the information set forth in paragraphs 1 through 55 as though fully set forth herein.

57. The ALJ erroneously found that the services at issue were not entitled to payment by Medicare and that Plaintiff was not entitled to a limitation or waiver of liability.

58. The erroneous rulings are arbitrary and capricious, an abuse of discretion, or otherwise unlawful.

59. Plaintiff has no other adequate administrative or other remedy to address the ALJ's unlawful action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an order reversing the Decision that Plaintiff was not entitled to payment for the services at issue involving Fluid Flow.

B. Alternatively, for an order reversing the Decision that Plaintiff was not entitled to a limitation of liability or complete waiver of the overpayment.

C. For an order requiring CMS to reimburse Plaintiff for the services at issue inclusive of all interest accrued.

D. For such other and further legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

**HILL | FENSTERMAKER, LLC**

**By:** ______________________________

**JOHN R. HILL, ESQUIRE**
HILL FENSTERMAKER, LLC
1 W. Broad St, Suite 210
Bethlehem, PA 18018
(610) 694-1100
john@hillfenstermaker.com
Attorney for Plaintiff,
Elliot Diamond, DPM

Date: November 16, 2026

# EXHIBIT “A”

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Miami Field Office
Claude Pepper Federal Building
51 SW 1st Avenue, Suite 1400A
Miami, FL 33130-1608
(786) 792-3700
(786) 792-3793 (Direct)
(305) 536-5050 (Fax)
(866) 622-0382 (Toll Free)

November 30, 2023

PARSONS BEHLE & LATIMER
ATTN: J KEVIN WEST
800 W MAIN ST
STE 1300
BOISE, ID 83702

**NOTICE OF DECISION**

Appellant: Dr. ELLIOT DIAMOND -- DPM
OMHA Appeal Number: 3-12978272650

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:
Department of Health and Human Services
Departmental Appeals Board

Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

R.

[IF MULTIPLE BENEFICIARY APPEAL ONLY INPUT: To protect beneficiary privacy, names and addresses of other individuals have been removed from your copy of this notice.]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List
Attachment A

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Miami, FL

| | | | |
|---|---|---|---|
| Appeal of: | Dr. ELLIOT DIAMOND -- DPM | OMHA Appeal No.: | 3-12978272650 |
| Beneficiary: | Multiple (See Attachment A) | Medicare Part: | B |
| Medicare No.: | Multiple (See Attachment A) | Before: | Gerald Foulds<br>Administrative Law Judge |

## DECISION

After considering the evidence and arguments presented in the record, the undersigned enters an **UNFAVORABLE** decision as to all the claims at issue. The Q4206: Fluid Flow Or Fluid Gf and related services that Dr. Elliot Diamond DPM ("Appellant") provided to the Beneficiaries listed in Attachment A are not covered under Medicare Part B.

## PROCEDURAL HISTORY

Appellant submitted Medicare claims for Q4206: Fluid Flow Or Fluid Gf and related services that Appellant administered to the Beneficiaries listed in Attachment A from May 17, 2021 through October 18, 2021. (Files 2, 7). Upon initial determination, Novitas Solutions, Inc., the Medicare Administrative Contractor ("Contractor"), paid Appellant's claims. (File 2). Subsequently, SafeGuard Services, the Unified Program Integrity Contractor (UPIC), conducted a postpayment review and determined that an overpayment had occurred. (*Id.*) Appellant requested redetermination, and the Contractor issued an unfavorable decision, finding that the overpayment determination is valid. (*Id.*) Appellant requested reconsideration, and C2C Innovative Solutions, Inc., the Qualified Independent Contractor ("QIC"), issued an unfavorable decision, finding that the claims are not covered by Medicare, the overpayment determination is valid, and Appellant is responsible for payment for the denied charges. (*Id.*)

On October 11, 2023, the Office of Medicare Hearings and Appeals (OMHA) received Appellant's Request for Medicare Hearing by an Administrative Law Judge ("ALJ"). (File 1). The request was timely, and the amount in controversy satisfies the jurisdictional requirement for an ALJ hearing pursuant to Section 1869(b)(1) of the Social Security Act ("Act").

On November 16, 2023, a telephonic hearing was held before the undersigned in Miami, Florida. (File 30). Attorney J. Kevin West represented Appellant, and Elliot Diamond, DPM and Richard Silverstein, DPM appeared on behalf of Appellant. The record includes Files 1 through 31, which are admitted without objection, including the recorded hearing testimony.

## ISSUE(S)

A. Whether the claims for Q4206: Fluid Flow Or Fluid Gf and related services that Appellant furnished to the Beneficiaries are covered under Medicare Part B.

B. If coverage is denied, whether Medicare payment may still be made under the limitation on liability provision of Section 1879(a) of the Act.

C. If the Appellant is found liable, whether the Appellant is entitled to waiver of recovery of overpayment under Section 1870(b)(1) of the Act.

## APPLICABLE LAW AND POLICY

### I. Statutes and Regulations

The Medicare program, Title XVIII of the Act, is administered through the Centers for Medicare and Medicaid Services ("CMS"). Section 1831 of the Act establishes the supplementary medical insurance program for the aged and the disabled, known as Medicare Part B. Section 1832 of the Act sets forth the scope of benefits furnished under the Medicare Part B supplementary medical insurance program. *See* 42 C.F.R. § 410.3. Under Section 1832(a)(2) of the Act, an individual is entitled to have payment made to him or her or on his or her behalf for medical and other health services furnished by a provider of services or by others under arrangement with them made by a provider of services. Section 1861(s) of the Act and 42 C.F.R. § 410.10 define the term "medical and other health services" to specifically include services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service.

Section 1861(t) of the Act defines the term "drugs and biologicals" as follows:

> (t) (1) The term "drugs" and the term "biologicals", except for purposes of subsection (m)(5) and paragraph (2), include only such drugs (including contrast agents) and biologicals, respectively, as are included (or approved for inclusion) in the United States Pharmacopoeia, the National Formulary, or the United States Homeopathic Pharmacopoeia, or in New Drugs or Accepted Dental Remedies (except for any drugs and biologicals unfavorably evaluated therein), or as are approved by the pharmacy and drug therapeutics committee (or equivalent committee) of the medical staff of the hospital furnishing such drugs and biologicals for use in such hospital.
> (2) (A) For purposes of paragraph (1), the term "drugs" also includes any drugs or biologicals used in an anticancer chemotherapeutic regimen for a medically accepted indication (as described in subparagraph (B)).
> (B) In subparagraph (A), the term "medically accepted indication", with respect to the use of a drug, includes any use which has been approved by the Food and Drug Administration for the drug, and includes another use of the drug if—
> (i) the drug has been approved by the Food and Drug Administration; and
> (ii) (I) such use is supported by one or more citations which are included (or approved for inclusion) in one or more of the following compendia: the American Hospital Formulary Service-Drug Information, the American Medical Association

> Drug Evaluations, the United States Pharmacopoeia-Drug Information, and other authoritative compendia as identified by the Secretary, unless the Secretary has determined that the use is not medically appropriate or the use is identified as not indicated in one or more such compendia, or
> (II) the carrier involved determines, based upon guidance provided by the Secretary to carriers for determining accepted uses of drugs, that such use is medically accepted based on supportive clinical evidence in peer reviewed medical literature appearing in publications which have been identified for purposes of this subclause by the Secretary.

Section 1833(e) of the Act and 42 C.F.R § 424.5(6) provide that no payment shall be made to any provider of services or other person unless sufficient information is furnished to determine whether payment is due and the amount of payment.

Section 1862(a) of the Act states, in pertinent part: "[n]otwithstanding any other provision of this title, no payment may be made under . . . Part B for any expenses incurred for items or services -- (1)(A) which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member . . . ." Act § 1862(a)(1)(A); *see* 42 C.F.R. § 411.15(k)(1).

Section 1879(a) of the Act limits the liability of the beneficiary or provider of services (or both) if a coverage denial is based on a finding that the services or items were not medically reasonable and necessary under Section 1862(a)(1)(A) of the Act. Section 1879(a) of the Act provides that the limitation on liability applies when a beneficiary or the provider did not know, and could not reasonably have been expected to know that the services or items would not be covered. *See* 42 C.F.R. § 411.400.

## II. Policy and Guidance

Section 1871(a)(2) of the Act states that, unless promulgated as a regulation by CMS, no rule, requirement, or statement of policy, other than a National Coverage Determination ("NCD"), can establish or change a substantive legal standard governing the scope of benefits or payment for services under the Medicare program. Section 1869(f)(1) of the Act provides that an NCD is binding upon an ALJ. *See* 42 C.F.R. § 405.1060(a)(4).

In lieu of binding regulations with the full force and effect of law, CMS and its contractors have issued policy guidance that describe criteria for coverage of selected types of medical items and services in the form of manuals and local medical review policies ("LMRPs") or local coverage determinations ("LCDs"). Section 1869(f)(2) of the Act provides that an ALJ will give substantial deference to LCDs, LMRPs, or CMS program guidance when applicable. *See also* 42 C.F.R. 405.1062. If an ALJ declines to follow such guidance in a particular case, the ALJ must explain the reasons for not following the policy in his or her decision. (*Id.*).

The Medicare Benefit Policy Manual sets forth detailed coverage guidelines relating to Medicare coverage for drugs and biologicals. *See* CMS, *Medicare Benefit Policy Manual* (*MBPM*) (Internet-Only Manual Publ'n 100-2) ch. 15, § 50. The MBPM provides as follows:

> The Medicare program provides limited benefits for outpatient drugs. The program covers drugs that are furnished "incident to" a physician's service provided that the drugs are not usually self-administered by the patients who take them.
>
> Generally, drugs and biologicals are covered only if all of the following requirements are met:
> ■They meet the definition of drugs or biologicals (see §50.1);
> ■They are of the type that are not usually self-administered. (see §50.2);
> ■They meet all the general requirements for coverage of items as incident to a physician's services (see §§50.1 and 50.3);
> ■They are reasonable and necessary for the diagnosis or treatment of the illness or injury for which they are administered according to accepted standards of medical practice (see §50.4);
> ■They are not excluded as noncovered immunizations (see §50.4.4.2); and
> ■They have not been determined by the FDA to be less than effective. (See §§50.4.4).

In addition, the Medicare Claims Processing Manual provides detailed instructions on billing and claims processing for drugs and biologicals. *See* CMS, *Medicare Claims Processing Manual* (*MCPM*) (Internet-Only Manual Publ'n 100-4) ch. 17. The MCPM also provides guidance on the application of the limitation of liability provision of Section 1879(a) of the Act. *See MCPM*, *supra* ch. 30.

## <u>FINDINGS OF FACT AND ANALYSIS</u>

Having conducted a thorough *de novo* review of the record, the undersigned finds that the claims for Q4206: Fluid Flow Or Fluid Gf and the related services that Appellant furnished to Beneficiary do not satisfy the criteria for Medicare coverage.

In the instant case, the QIC issued an unfavorable decision, finding the claims are not covered by Medicare, and Appellant is responsible for payment for the denied charges. (File 2). The QIC found that the documentation indicates injections of amniotic allograft fluid were given to treat bursitis, synovitis and tendonitis. (*Id.*) The QIC found that this product has not been proven to be safe and effective in these circumstances. (*Id.*) The QIC also found that, as a result, this product is considered investigational and experimental. (*Id.*) The QIC further found that since the biologic is denied as not medically reasonable and necessary, the associated injection code is also denied as not medically reasonable and necessary. (*Id.*) The QIC concluded that the claims at issue are not covered by Medicare, and no payment can be allowed. (*Id.*)

## I. Findings of Fact

After careful consideration of the entire record (Exhibit List attached and incorporated herein), a preponderance of the evidence establishes the following facts:

From May 17, 2021 through October 18, 2021, Appellant administered injections of amniotic allograft fluid (Q4206: Fluid Flow or Fluid GF) to multiple Medicare Beneficiaries as listed in Attachment A. (File 7). Appellant administered the injections of amniotic allograft fluid to the Beneficiaries to treat conditions, including bursitis, synovitis, and tendonitis. (*Id.*)

## II. Analysis

Here, the coverage criteria at issue have not been satisfied. The MBPM states as follows:

> **50.4.1 - Approved Use of Drug**
> Use of the drug or biological must be safe and effective and otherwise reasonable and necessary. (See the Medicare Benefit Policy Manual, Chapter 16, "General Exclusions from Coverage," §20.) Drugs or biologicals approved for marketing by the Food and Drug Administration (FDA) are considered safe and effective for purposes of this requirement when used for indications specified on the labeling. Therefore, the program may pay for the use of an FDA approved drug or biological, if:
>
> - It was injected on or after the date of the FDA's approval;
> - It is reasonable and necessary for the individual patient; and
> - All other applicable coverage requirements are met.
>
> The A/B MAC (A), (B), or (HHH), or DME MAC will deny coverage for drugs and biologicals which have not received final marketing approval by the FDA unless it receives instructions from CMS to the contrary. For specific guidelines on coverage of Group C cancer drugs, see the Medicare National Coverage Determinations Manual. If there is reason to question whether the FDA has approved a drug or biological for marketing, the carrier or intermediary must obtain satisfactory evidence of FDA's approval. Acceptable evidence includes:
>
> - A copy of the FDA's letter to the drug's manufacturer approving the new drug application (NDA);
> - A listing of the drug or biological in the FDA's "Approved Drug Products" or "FDA Drug and Device Product Approvals";

- A copy of the manufacturer's package insert, approved by the FDA as part of the labeling of the drug, containing its recommended uses and dosage, as well as possible adverse reactions and recommended precautions in using it; or
- Information from the FDA's Web site.

*See MBPM, supra* ch. 15, § 50.4.

The undersigned agrees with the QIC, finding that Appellant has not provided sufficient documentation to support that the administration of injections of amniotic allograft fluid (Q4206: Fluid Flow or Fluid GF) to multiple Medicare Beneficiaries as listed in Attachment A satisfies Medicare coverage criteria. The record, including the documentation and hearing testimony, does not establish that an injection of amniotic allograft fluid (Q4206: Fluid Flow or Fluid GF) for the treatment of conditions, including bursitis, synovitis, and tendonitis, has received final marketing approval by the FDA thereby supporting that its use is considered safe and effective and otherwise reasonable and necessary.

The Technical Direction Letter ("TDL"), dated March 25, 2022, does not establish that Medicare provides coverage for the claims at issue. The TDL merely establishes that claims for the product at issue would not receive blanket denials, but each claim would be evaluated individually. The TDL specifically states that the recission of the previous TDLs is not intended by CMS and shall not be construed as a finding that any products are eligible for coverage or payment. (File 29).

The Local Coverage Article ("LCA") A54117 does not establish that Medicare provides coverage for the product at issue. LCA A54117 provides billing and coding guidance for Local Coverage Determination ("LCD") L35041, Application of Bioengineered Skin Substitutes to Lower Extremity Chronic Non-Healing Wounds. LCA A54117 merely states that "[c]laims reporting skin substitutes represented by a Q code must contain the presence of an appropriate application CPT code [, and] and HCPCS codes Q4177 and Q4206 are exceptions and do not require an application code." *See* Novitas Solutions, Inc. LCA A54117: *Application of Bioengineered Skin Substitutes to Lower Extremity Chronic Non-Healing Wounds*. This language does not establish that such codes are covered by Medicare when used to bill for an injection of amniotic allograft fluid (Q4206: Fluid Flow or Fluid GF) for the treatment of conditions, including bursitis, synovitis, and tendonitis.

The FDA's website includes a warning letter, dated August 23, 2022, directed to Biolab Sciences, Inc., the manufacturer of the product at issue, as established during the hearing. (File 31). The FDA stated, in pertinent part, as follows:

> the definition of HCT/Ps in 21 CFR 1271.3(d) excludes secreted or extracted human products. Accordingly, secreted bodily fluids, such as amniotic fluid, are generally not considered HCT/Ps subject to regulation under 21 CFR Part 1271. Amniotic fluid intended to treat diseases or conditions in humans is generally regulated as a drug under the FD&C Act and a biological product under the PHS Act and requires premarket review and approval. As such, [the] products derived from amniotic fluid, Fluid GF™, Fluid Flow™, are also regulated as drugs and biological products under section 351 of the PHS Act and the FD&C Act. In order to lawfully market a drug that is a biological product, a valid biologics license must be in effect [42 U.S.C. 262(a)]. Such licenses are issued only after showing that the product is safe, pure, and potent. While in the development stage, such products may be distributed for clinical use in humans only if the sponsor has an investigational new drug application (IND) in effect as specified by FDA

regulations [21 U.S.C. 355(i); 42 U.S.C. 262(a)(3); 21 CFR Part 312]. None of your products are the subject of an approved biologics license application (BLA), nor is there an IND in effect for any of them.

On the dates of service at issue, the product at issue was not subject to an investigational new drug application or an approved biologics license application, as required by the FDA, that allowed it to be lawfully marketed as a biological product. The record before the ALJ does not include a FDA letter to the manufacturer approving the new drug application, or a listing of the drug in the FDA's approved list, or a copy of the manufacturer's package insert, approved by the FDA as part of the drug labeling. Therefore, the undersigned finds that the administration of injections of amniotic allograft fluid (Q4206: Fluid Flow or Fluid GF) to multiple Medicare Beneficiaries as listed in Attachment A is not covered by Medicare.

Based on the foregoing, Appellant's claims are not covered by Medicare, and an analysis under Section 1879(a) of the Act is necessary. Pursuant to Section 1879(a), the limitation on liability provision applies if a coverage denial is based on a finding that services were not reasonable and necessary under Section 1862(a)(1) of the Act and the beneficiary, or the provider (or both) did not know and could not reasonably have been expected to know that the services would not be covered. *See* Act § 1879(a); *MCPM, supra* ch. 30.

Here, the limitation on liability provision of section 1879(a) of the Act applies to the Beneficiaries. The record does not contain documentation that the Beneficiaries were given prior written notice that Medicare would not cover the product at issue. *See* 42 C.F.R. § 411.404; *MCPM, supra* ch. 30. Thus, the Beneficiaries are relieved of any liability for the non-covered charges pursuant to Section 1879(a) of the Act.

However, the limitation on liability provision of Section 1879(a) of the Act does not apply to Appellant. The record lacks evidence that Appellant, as a Medicare program participant that should be familiar with Medicare laws, regulations and policies, lacked access to CMS notices and Federal Register publications regarding Medicare coverage and payment criteria. As a result, Appellant is deemed to have had actual or constructive notice that the product at issue would not be covered. *See* 42 C.F.R. § 411.406; *MCPM, supra* ch. 30. Thus, Appellant is liable for payment for the non-covered charges.

Having found that the limitation on liability provision of Section 1879 of the Act are not applicable to the Appellant, the undersigned finds that an overpayment exists in this case. Consequently, the final issue to be decided is whether the Appellant is entitled to waiver of the existing overpayment under Section 1870 of the Act. As set forth in Section 1870 of the Act, waiver of an overpayment is appropriate when an Appellant is "without fault" in accepting the improper Medicare payment. Here, the Appellant was not without fault. As a provider of services to Medicare beneficiaries, the Appellant should be familiar with Medicare regulations regarding coverage requirements and reimbursements for the product and services at issue. Based on the foregoing, Medicare may seek to recover the amount overpaid.

## CONCLUSIONS OF LAW

The claims for Q4206: Fluid Flow Or Fluid Gf and related services that Appellant administered to the Beneficiaries listed in Attachment A are not covered under Medicare Part B. Appellant is responsible for the non-covered charges.

## ORDER

For the reasons discussed above, this decision is **UNFAVORABLE**. Appellant is responsible for the non-covered charges. The undersigned directs the Medicare administrative contractor to process the claim in accordance with this decision.

OMHA Appeal No.3-12978272650

**Attachment A**

| Claim No. | Medicare No. | Beneficiary | Date of Service | Procedure Codes | Decision |
|---|---|---|---|---|---|
| 4722222900111 | *****AH20 | R. ARNOLD | 08/10/21 | 20605 | Unfavorable |
| 4722222900112 | *****AH20 | R. ARNOLD | 08/10/21 | Q4206 | Unfavorable |
| 4722222900113 | *****AH20 | R. ARNOLD | 06/01/21 | 20605 | Unfavorable |
| 4722222900114 | *****AH20 | R. ARNOLD | 06/01/21 | Q4206 | Unfavorable |
| 4722222900115 | *****AH20 | R. ARNOLD | 06/29/21 | 20550 | Unfavorable |
| 4722222900116 | *****AH20 | R. ARNOLD | 06/29/21 | Q4206 | Unfavorable |
| 4722222900086 | *****DH12 | A. BERGER | 07/26/21 | 20600 | Unfavorable |
| 4722222900087 | *****DH12 | A. BERGER | 07/26/21 | Q4206 | Unfavorable |
| 4722222900072 | *****NX70 | N. CASHION | 07/29/21 | 20550 | Unfavorable |
| 4722222900073 | *****NX70 | N. CASHION | 07/29/21 | Q4206 | Unfavorable |
| 4722222900123 | *****GE33 | J. COHEN | 06/08/21 | 20605 | Unfavorable |
| 4722222900124 | *****GE33 | J. COHEN | 06/08/21 | Q4206 | Unfavorable |
| 4722222900084 | *****646A | J. DANTONIO | 06/07/21 | 20550 | Unfavorable |
| 4722222900085 | *****646A | J. DANTONIO | 06/07/21 | Q4206 | Unfavorable |
| 4722222900127 | *****DQ36 | M. EISENMAN | 08/31/21 | 20605 | Unfavorable |
| 4722222900128 | *****DQ36 | M. EISENMAN | 08/31/21 | Q4206 | Unfavorable |
| 4722222900129 | *****YY18 | L. FUNSTON | 08/02/21 | 20550 | Unfavorable |
| 4722222900130 | *****YY18 | L. FUNSTON | 08/02/21 | Q4206 | Unfavorable |
| 4722222900131 | *****YY18 | L. FUNSTON | 08/16/21 | 20605 | Unfavorable |
| 4722222900132 | *****YY18 | L. FUNSTON | 08/16/21 | Q4206 | Unfavorable |
| 4722222900133 | *****YY18 | L. FUNSTON | 10/18/21 | 20605 | Unfavorable |
| 4722222900134 | *****YY18 | L. FUNSTON | 10/18/21 | Q4206 | Unfavorable |
| 4722222900117 | *****TQ88 | M. GALGON | 09/09/21 | 20550 | Unfavorable |
| 4722222900118 | *****TQ88 | M. GALGON | 09/09/21 | Q4206 | Unfavorable |
| 4722222900090 | *****809A | R. HERSKOVITZ | 07/20/21 | 20600 | Unfavorable |
| 4722222900091 | *****809A | R. HERSKOVITZ | 07/20/21 | Q4206 | Unfavorable |
| 4722222900105 | *****DU02 | K. HOLTZER | 07/22/21 | 20550 | Unfavorable |
| 4722222900106 | *****DU02 | K. HOLTZER | 07/22/21 | Q4206 | Unfavorable |
| 4722222900107 | *****DU02 | K. HOLTZER | 05/18/21 | 20550 | Unfavorable |
| 4722222900108 | *****DU02 | K. | 05/18/21 | Q4206 | Unfavorable |

| | | | | | |
|---|---|---|---|---|---|
| | | HOLTZER | | | |
| 4722222900074 | *****TC08 | D. HOWERTON | 07/26/21 | 20600 | Unfavorable |
| 4722222900075 | *****TC08 | D. HOWERTON | 07/26/21 | Q4206 | Unfavorable |
| 4722222900076 | *****TC08 | D. HOWERTON | 10/11/21 | 20600 | Unfavorable |
| 4722222900077 | *****TC08 | D. HOWERTON | 10/11/21 | Q4206 | Unfavorable |
| 4722222900078 | *****DY09 | M. KARPIN | 09/07/21 | 20600 | Unfavorable |
| 4722222900079 | *****DY09 | M. KARPIN | 09/07/21 | Q4206 | Unfavorable |
| 4722222900080 | *****DY09 | M. KARPIN | 06/24/21 | 20600 | Unfavorable |
| 4722222900081 | *****DY09 | M. KARPIN | 06/24/21 | Q4206 | Unfavorable |
| 4722222472000 | *****WJ46 | M. KERR | 08/03/21 | 20605 | Unfavorable |
| 4722222900065 | *****WJ46 | M. KERR | 08/03/21 | Q4206 | Unfavorable |
| 4722222900103 | *****VC02 | S. KLEIN | 08/30/21 | 20605 | Unfavorable |
| 4722222900104 | *****VC02 | S. KLEIN | 08/30/21 | Q4206 | Unfavorable |
| 4722222900109 | *****NV05 | A. MAHER | 06/15/21 | 20605 | Unfavorable |
| 4722222900110 | *****NV05 | A. MAHER | 06/15/21 | Q4206 | Unfavorable |
| 4722222900092 | *****PD74 | E. MCKEON | 07/05/21 | 20600 | Unfavorable |
| 4722222900093 | *****PD74 | E. MCKEON | 07/05/21 | Q4206 | Unfavorable |
| 4722222900094 | *****PD74 | E. MCKEON | 10/07/21 | 20600 | Unfavorable |
| 4722222900095 | *****PD74 | E. MCKEON | 10/07/21 | Q4206 | Unfavorable |
| 4722222900139 | *****KF14 | G. NORTON | 08/31/21 | 20550 | Unfavorable |
| 4722222900140 | *****KF14 | G. NORTON | 08/31/21 | Q4206 | Unfavorable |
| 4722222900141 | *****KF14 | G. NORTON | 09/14/21 | 20600 | Unfavorable |
| 4722222900142 | *****KF14 | G. NORTON | 09/14/21 | Q4206 | Unfavorable |
| 4722222900096 | *****GQ58 | T. ODONNELL | 08/03/21 | 20605 | Unfavorable |
| 4722222900097 | *****GQ58 | T. ODONNELL | 08/03/21 | Q4206 | Unfavorable |
| 4722222900088 | *****HH26 | E. PALLADINO | 08/31/21 | 20600 | Unfavorable |
| 4722222900089 | *****HH26 | E. PALLADINO | 08/31/21 | Q4206 | Unfavorable |
| 4722222900068 | *****RP67 | D. PEARSON | 06/15/21 | 20550 | Unfavorable |
| 4722222900069 | *****RP67 | D. PEARSON | 06/15/21 | Q4206 | Unfavorable |
| 4722222900070 | *****RP67 | D. PEARSON | 06/29/21 | 20550 | Unfavorable |
| 4722222900071 | *****RP67 | D. PEARSON | 06/29/21 | Q4206 | Unfavorable |
| 4722222900125 | *****MT57 | J. POTTER | 10/12/21 | 20600 | Unfavorable |
| 4722222900126 | *****MT57 | J. POTTER | 10/12/21 | Q4206 | Unfavorable |

| | | | | | |
|---|---|---|---|---|---|
| 4722222900100 | *****GU68 | B. REISBOARD | 05/17/21 | 20605 | Unfavorable |
| 4722222900100 | *****GU68 | B. REISBOARD | 05/17/21 | Q4206 | Unfavorable |
| 4722222900101 | *****GU68 | B. REISBOARD | 07/26/21 | 20605 | Unfavorable |
| 4722222900102 | *****GU68 | B. REISBOARD | 07/26/21 | Q4206 | Unfavorable |
| 4722222900098 | *****KW67 | R. ROSNER | 08/26/21 | 20605 | Unfavorable |
| 4722222900099 | *****KW67 | R. ROSNER | 08/26/21 | Q4206 | Unfavorable |
| 4722222900082 | *****TU57 | J. SCHANKEL | 06/03/21 | 20550 | Unfavorable |
| 4722222900083 | *****TU57 | J. SCHANKEL | 06/03/21 | Q4206 | Unfavorable |
| 4722222900135 | *****AQ54 | L. SCHATZ | 10/04/21 | 20600 | Unfavorable |
| 4722222900136 | *****AQ54 | L. SCHATZ | 10/04/21 | Q4206 | Unfavorable |
| 4722222900137 | *****AQ54 | L. SCHATZ | 07/01/21 | 20600 | Unfavorable |
| 4722222900138 | *****AQ54 | L. SCHATZ | 07/01/21 | Q4206 | Unfavorable |
| 4722222900119 | *****DG55 | B. URIBE BARLEY | 08/16/21 | 20605 | Unfavorable |
| 4722222900120 | *****DG55 | B. URIBE BARLEY | 08/16/21 | Q4206 | Unfavorable |
| 4722222900121 | *****DG55 | B. URIBE BARLEY | 06/14/21 | 20605 | Unfavorable |
| 4722222900122 | *****DG55 | B. URIBE BARLEY | 06/14/21 | Q4206 | Unfavorable |
| 4722222900066 | *****627A | K. WEINSTEIN | 09/09/21 | 20605 | Unfavorable |
| 4722222900067 | *****627A | K. WEINSTEIN | 09/09/21 | Q4206 | Unfavorable |

**SO ORDERED**

Gerald Foulds

Gerald Foulds
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| DATE | | | DATE | | |
|---|---|---|---|---|---|
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

# EXHIBIT “B”

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-24-1639**

Dr. Elliot Diamond DPM, Appellant
OMHA Appeal No. 3-12978272650

## ORDER OF MEDICARE APPEALS COUNCIL GRANTING REQUEST FOR ESCALATION

The Medicare Appeals Council (Council) received your request to escalate the above appeal to Federal district court dated August 6, 2026.[1] The Council grants your request for escalation.

The 90-day time frame for the Council to issue a decision, dismissal, or remand order has expired. *See* 42 C.F.R. § 405.1100(c). Due to the large number of pending appeals, the Council is unable to issue a decision, dismissal, or remand order within five calendar days of your request to escalate to Federal district court. 42 C.F.R. § 405.1132(a)(1). Under these circumstances, the regulations permit you to bypass Council review and seek review of the Administrative Law Judge's (ALJ's) decision in Federal district court. 42 C.F.R. § 405.1132(a)(2).

In order to escalate, you must file an action in Federal district court within 60 calendar days after you receive this notice and the amount in controversy must be $1,960 or more. 42 C.F.R. §§ 405.1132(b), 405.1136(a)(1); see also 90 Fed. Reg. 55869 (Dec. 4, 2025). If you cannot file your complaint within 60 days, you may ask the Council to extend the time in which you may begin a civil action. However, the Council will only extend the time if you provide a good reason for not meeting the deadline. Your reason must be set forth clearly in your request. 42 C.F.R. § 405.1134. If you do not file an action in Federal district court, then your appeals will remain before the Council. 42 C.F.R. § 405.1136(a)(2).

If a civil action is commenced, the complaint should name the Secretary of Health and Human Services as the defendant and should include the Council docket numbers and ALJ appeal numbers that you are appealing. 42 C.F.R. § 405.1136(d). The Secretary must be served by sending a copy of the summons and complaint by registered or

[1] A list with the beneficiaries' initials, the last four digits of the beneficiaries' Health Insurance Claim Number (HICN), and the dates of service at issue is attached to this action. *See* Attachment A.

certified mail to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201.

In addition, you must serve the United States Attorney for the district in which you file your complaint and the Attorney General of the United States. See rules 4(c) and (i) of the Federal Rules of Civil Procedure and 45 C.F.R. § 4.1.

**MEDICARE APPEALS COUNCIL**

Cristina Prelle
Administrative Appeals Judge

Date: September 18, 2026